1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   DOROTHY RODDEN JACKSON,              No. 2:16–cv–00891–TLN–KJN

12              Plaintiff,

13        v.                              **ORDER**

14   RICHARD CALONE; CALONE &
     HARREL LAW GROUP, LLP; CALONE
15   & BEATTIE, LLP; and CALONE LAW
     GROUP, LLP,
16
                Defendants.
17

18         This matter is before the Court on Plaintiff Dorothy Jackson's ("Plaintiff") Motion for

19   Leave to Amend (ECF No. 139), Motion to File a Supplemental Complaint (ECF No. 172),

20   Motion for Partial Summary Judgment (ECF No. 179), and Motion to Enforce the Scheduling

21   Order (ECF No. 196).  Defendants Richard Calone; Calone & Harrel Law Group, LLP; Calone &

22   Beattie, LLP; and Calone Law Group, LLP (collectively "Defendants") oppose Plaintiff's

23   motions.  (ECF Nos. 142, 173, 202, 205.)  Also before the Court are Defendants' Motion for

24   Summary Judgment (ECF No. 193) and Motion to Dismiss Pursuant to Rule 41(b) (ECF No.

25   194).  Plaintiff opposes Defendants' motions.  (ECF Nos. 206, 207.)

26         After carefully considering the parties' briefing and for the reasons set forth below, the

27   Court hereby DENIES all the foregoing motions.  (ECF Nos. 139, 172, 179, 196, 193, 194.)

28   ///

                                              1

## I.  FACTUAL BACKGROUND[1]

Plaintiff asserts a variety of claims arising out of legal services that Defendant Richard Calone ("Defendant Calone"), Plaintiff's former attorney, provided to her regarding the preparation of a family trust.  (ECF No. 193-1 at 5.)  Plaintiff and her husband, Donald, retained Defendant Calone to prepare a revocable family trust in 1993 ("the 1993 Trust").  (ECF No. 206 at 8.)  The property placed in the trust included: an interest in a partnership; an interest in a limited liability company ("Florida Avenue"); and 110 property shares in the Rodden family corporation, V.A. Rodden, Inc. ("V.A. Rodden").  (ECF No. 206 at 6.)

In 2005, Plaintiff began living separate from her husband, and Defendant Calone drafted a marital property transmutation agreement ("the Marital Agreement") effectively transmuting all of Plaintiff and her husband's separate property into community property.  (ECF No. 206 at 9.)  During that same year, Defendant Calone amended the 1993 Trust ("the 2005 Amendment"), allowing the trustees (Plaintiff and her husband) to transfer their interests in Florida Avenue and V.A Rodden to Plaintiff's son, Bill Jackson, as gifts during the trustee's lifetime, making the 1993 Trust irrevocable as amended.  (ECF No. 193-1 at 9.)

In 2007, Defendant Calone prepared a gift of a portion of the interest in Florida Avenue to Bill.  (ECF No. 193-1 at 10.)  Defendant Calone made additional gifts of interest in Florida Avenue to Bill between 2007 and 2012.  (ECF No. 193-1 at 10.)

In 2012, Defendant Calone prepared a grantor trust ("the 2012 Trust") with Bill as trustee, Plaintiff and her husband as settlors, and Bill and his wife, Nancy, as beneficiaries.  (ECF No. 193-1 at 11.)  In December of 2012, Defendant Calone transferred the remaining interest in Florida Avenue and the 110 shares in V.A. Rodden from the 1993 Trust to the 2012 Trust.  (ECF No. 206 at 13.)

On April 28, 2016, Plaintiff brought the instant action based on Defendant Calone's involvement in the foregoing transactions, claiming (1) professional negligence, (2) breach of fiduciary duty, (3) constructive fraud, and (4) financial elder abuse.  (ECF No. 1 at 10–13.)

---

[1]  The background section provides a general overview of the dispute based on the evidence submitted by the parties, from which the Court finds there are no genuine issues of material fact.  A more detailed analysis of the evidentiary record appears in the discussion below.

## II.   PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff moves to amend her Complaint to allege that Defendants are equitably estopped to assert the statute of limitations as a defense.  (ECF No. 139 at 1.)  Defendants oppose Plaintiff's motion, arguing that Plaintiff's proposed amendment is improper under Federal Rule of Civil Procedure ("Rule") 15(a).  (ECF No. 142.)

### A.  Standard of Law

Granting or denying leave to amend a complaint rests in the sound discretion of the trial court. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).  When the Court issues a pretrial scheduling order that establishes a timetable to amend the complaint, Rule 16 governs any amendments to the complaint. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  A plaintiff must first satisfy Rule 16's "good cause" standard before seeking to amend the complaint under Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–608 (9th Cir. 1992).  Rule 16 applies to this motion as it was filed after the Court entered its Scheduling Order.  (ECF No. 126.)

To allow for amendment under Rule 16, a plaintiff must show good cause for not having amended the complaint before the time specified in the pretrial scheduling order. *Johnson*, 975 F.2d at 607–608.  The good cause standard primarily considers the diligence of the party seeking the amendment. *Id*. at 609.  The focus of the inquiry is on the reasons why the moving party seeks to modify the complaint. *Id.*  Under Rule 15, the Ninth Circuit has considered five factors in determining whether leave to amend should be given: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

### B.  Analysis

Plaintiff moves to amend out of concern that she will forfeit an equitable estoppel defense if it is not pleaded in the operative complaint.  (ECF No. 139 at 1.)  Specifically, Plaintiff seeks to allege that Defendant Calone failed to provide Plaintiff with key documents that would have allowed her to bring her suit sooner.  (ECF No. 139-1 ¶ 30.)

3

In opposition, Defendants do not address whether Plaintiff will forfeit an equitable estoppel defense if facts supporting such a defense are not pleaded in the Complaint. Defendants instead analyze whether the proposed amendment is proper under Rule 15(a). But the Scheduling Order requires Plaintiff to show good cause to amend her pleading at this stage. (ECF No. 126.) As such, the Court will first analyze Plaintiff's motion pursuant to Rule 16's more stringent good cause standard.

Despite Plaintiff's concern about forfeiting an equitable estoppel defense, a plaintiff is not ordinarily required to plead around affirmative defenses.[2] *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017) (citing *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993)). While Rule 8(c) requires a defendant to plead affirmative defenses, Rule 8(a) does not require a plaintiff to anticipate those defenses. Fed. R. Civ. P. 8. Rather, Rule 8(a) requires only that a complaint contain (1) grounds for the court's jurisdiction, (2) a statement of the claim showing the pleader is entitled to relief, and (3) a demand for relief sought. *Id.* Neither party cites any authority holding that a plaintiff in federal court forfeits an equitable estoppel defense if it is not pleaded.[3]

For these reasons, the Court finds that Plaintiff has not shown good cause to amend her Complaint at this late stage in the litigation. Put simply, there is no need for Plaintiff to amend the Complaint, and Plaintiff is not precluded from arguing equitable estoppel against Defendants' statute of limitations defense. As such, the Court additionally finds such an amendment would be futile. Therefore, the Court DENIES Plaintiff's Motion for Leave to Amend. (ECF No. 139.)

### III. PLAINTIFF'S MOTION TO FILE A SUPPLEMENTAL COMPLAINT

Plaintiff moves to file a supplemental complaint, wherein she seeks damages stemming from a separate but related case with her son. (ECF No. 172 at 1.) Defendants oppose the

---

[2] Failure to plead around a statute of limitations may result in dismissal if a plaintiff's claims are facially time-barred. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). This Court has already ruled that Plaintiff's Complaint sufficiently pleaded around the applicable statute of limitations on other grounds. (ECF 99.)

[3] Plaintiff, faced with uncertainty, cites several cases wherein California state courts required plaintiffs to plead estoppel or lose the defense. (ECF No. 139 at 7.) In federal court, federal pleading rules govern. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Therefore, Plaintiff's California state cases are unpersuasive.

4

motion, arguing the proposed addition would be improper under Rule 15(a).  (ECF No. 173 at 8.)

## A. Standard of Law

Rule 15(d) governs supplemental pleadings.  Fed. R. Civ. P. 15(d).  Under Rule 15(d), "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.*; *see also Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original [pleading] was filed.").  A trial court has broad discretion in deciding whether to permit a supplemental pleading. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Rule 16's "good cause" standard also applies to supplemental pleadings under Rule 15(d). *Johnson*, 975 F.2d at 607–08.  If the court has issued a pretrial scheduling order, a plaintiff must first satisfy Rule 16's "good cause" standard before seeking to supplement the complaint under Rule 15. *See id.*; s*ee also Murphy v. United States Forest Serv.*, No. 2:13-CV-02315-TLN-AC, 2016 WL 366434, at *3 (E.D. Cal. Feb. 1, 2016) (denying motion to file a supplemental complaint because the plaintiff failed to address Rule 16's good cause standard).

## B. Analysis

On November 21, 2016, Plaintiff entered into a settlement agreement in a separate but related case with her son, Bill Jackson.  (ECF No. 172-1 at 30.)  On August 8, 2018, Plaintiff sought to file a supplemental complaint in the present action, which adds the following two sentences: "Dorothy settled various claims against Bill.  Since that settlement, Dorothy has incurred, and will continue to occur, attorney's fees and related expenses to enforce her settlement agreement with Bill." (ECF No. 172 at 3.)

In opposition, Defendants do not address Plaintiff's diligence under Rule 16.  Defendants instead analyze the motion under Rule 15(a), arguing that supplementing the complaint would cause unfair prejudice and be futile.  (ECF No. 173 at 8–11.)  Because the Scheduling Order requires Plaintiff to show good cause, the Court looks to whether Plaintiff acted diligently in moving to file a supplemental complaint pursuant to Rule 16.

Plaintiff's proposed addition seems to assert that Defendants are liable not only for attorney's fees arising directly from the instant case, but also for costs related to enforcement of the separate settlement agreement between Plaintiff and her son. (ECF No. 172 at 3.) Plaintiff and her son signed the settlement agreement on November 21, 2016. (ECF No. 172-1 at 30.) Plaintiff did not file the instant motion until August 8, 2018. (ECF No. 172.)

Plaintiff argues that she acted diligently in moving to file a supplemental complaint shortly after her son manifested his intent to stop making the monthly payments required by the settlement agreement. (ECF No. 172 at 4.) However, Plaintiff's supplemental complaint is not so limited. Plaintiff broadly seeks "attorney's fees and related expenses to enforce her settlement agreement with Bill." (ECF No. 172 at 3.) In other words, the costs Plaintiff seeks potentially encompass all aspects of the settlement agreement, which was executed almost two years prior to Plaintiff's instant motion.

The Court also notes that in her reply brief, Plaintiff admits the costs related to enforcing the settlement agreement were foreseeable since the parties signed the agreement on November 21, 2016. (ECF No. 176 at 4.) Plaintiff's assertion undermines her argument that she was diligent in bringing the instant motion. *See Coleman*, 232 F.3d at 1295 (affirming trial court's denial of plaintiffs' motion to supplement because plaintiffs "[did] not offer any explanation for their failure to amend their complaints earlier"). For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate good cause. Thus, the Court DENIES Plaintiff's Motion to File a Supplemental Complaint. (ECF No. 172.)

### IV. PLAINTIFF'S MOTION TO ENFORCE THE SCHEDULING ORDER

Plaintiff moves to enforce the Scheduling Order by striking Defendants' rebuttal expert witness disclosure, arguing that the disclosure was untimely. (ECF No. 196 at 1.) Defendants oppose the motion, arguing that their rebuttal expert witness disclosure was timely. (ECF No. 202 at 5.)

#### A. Standard of Law

Under Rule 26(a)(2)(A), a party must disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26. Rule 26(a)(2)(D) requires parties to make these disclosures at the

time and in the sequence that the court orders. *Id.* Rule 26(a)(2)(D)(ii) states that rebuttal

testimony must "solely contradict or rebut evidence on the same subject matter." *Id.* Rebuttal

testimony is proper as long as it addresses the same subject matter that the initial experts address

and does not introduce new arguments. *See Perez v. State Farm Mut. Auto Ins. Co.*, No. C–06–

01962, 2011 WL 8601203, at *6 (N.D. Cal. Dec. 7, 2011); *Gen. Elec. Co. v. Wilkins*, 1:10–cv–

00674 LJO JLT, 2012 WL 5398407, at *2–3 (E.D. Cal. Nov. 2, 2012).

In the event that a disclosed rebuttal expert is not proper, "Rule 37 'gives teeth' to Rule

26's disclosure requirements by forbidding the use at trial of any information that is not properly

disclosed." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011)

(citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Rule

37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for

disclosure. *Id.* (internal citations omitted). Rule 37(c)(1)'s exclusion sanction is not appropriate

if the defective disclosure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

## B. Analysis

The thrust of Plaintiff's motion is that Defendants' rebuttal expert witness disclosure was

untimely for two reasons: (1) Defendants failed to file the disclosure with the Court; and (2)

Defendants improperly mischaracterized witnesses as "rebuttal" experts to take advantage of a

later disclosure deadline. (ECF No. 196 at 2.)

At the outset, the Court notes that Plaintiff previously filed a substantially identical

motion to strike Defendants' rebuttal expert witness disclosure (ECF No. 188), which the

magistrate judge denied as untimely. (ECF No. 192.) The magistrate judge provided,

> Inexplicably, Plaintiff filed this motion well over a month past the
> deadline for expert discovery and noticed the hearing on the same
> date by which all dispositive motions are to be heard. Indeed, the
> alleged improper conduct took place on October 1, 2018, and this
> motion was not filed until November 21, 2018.

(ECF No. 192 at 2.)

In the instant motion, Plaintiff does not directly challenge or ask the Court to

reconsider the magistrate judge's decision. She argues instead that unlike her previously

denied motion to strike, which the magistrate judge treated as a discovery motion, the

present motion is timely as a Motion to Enforce the Scheduling Order.  (ECF No. 203 at 3.)  However, as noted, the instant motion is essentially unchanged from the previous motion.  Indeed, the instant motion regurgitates the same discovery dispute at issue in the denied motion and again seeks relief under Rule 37.  *DeFazio v. Hollister, Inc.*, No. CIV S–04–1358 WBC GGH, 2008 WL 5113654, at *1 (E.D. Cal. Dec. 1, 2008) (analyzing the timeliness of a rebuttal expert witness disclosure as a discovery issue).  Plaintiff fails to persuade the Court that there is a meaningful distinction between her previously denied motion to strike and the instant motion.  Therefore, the Court finds that Plaintiff's renewed attempt to strike Defendants' disclosure is untimely for the same reasons expressed in the magistrate judge's decision, and the Motion is DENIED.  (ECF No. 196.)

Even assuming Defendants' disclosure was untimely, the Court may decline to strike a defective disclosure if the purported defect is harmless.  Fed. R. Civ. Pro. 37(c)(1).  Here, Defendants served Plaintiff with their rebuttal expert witness disclosure on the last day for such disclosure, October 1, 2018, but failed to file the disclosure with the Court.  (ECF No. 196 at 5.)  Despite being served with the disclosure on October 1, 2018, Plaintiff did not challenge the disclosure until November 21, 2018, presumably because she did not notice Defendants' failure to file with the Court until she was reviewing the docket for another pending motion.  (ECF No. 196 at 5.)  Even if Plaintiff did not realize Defendants failed to file the disclosure until some later date, Plaintiff had reason to know that Defendants mischaracterized their witnesses immediately upon being served with the disclosure on October 1, 2018.  Nonetheless, Plaintiff appears to have taken no action until she happened upon Defendants' failure to file with the Court.

Although Plaintiff asserts that she will be harmed by costs incurred to re-depose Defendants' witnesses as experts, Plaintiff's inaction contradicts the notion that her harm is significant enough to warrant striking Defendants' witness disclosure under Rule 37(c)(1).  *DeFazio*, 2008 WL 5113654, at *5.  As such, the Court DENIES Plaintiff's Motion to Enforce the Scheduling Order for this additional reason.  (ECF No. 196.)

///

## V. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment as to her malpractice claim. (ECF No. 179-1 at 2.) Defendants oppose Plaintiff's motion on various grounds. (ECF No. 205.)

### A. Standard of Law

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## B. Analysis

Plaintiff argues that she is entitled to partial summary judgment as to her malpractice claim based on Defendant Calone's mishandling of the 2012 Trust. (ECF No. 179-1 at 2.) More specifically, Plaintiff argues Defendant Calone fell below the standard of care by (1) failing to ensure Plaintiff had sufficient income before entering into the 2012 Trust, (2) failing to ensure that certain promises from Bill Jackson to Plaintiff were enforceable, and (3) failing to include a toggle clause to allow Plaintiff to escape tax liability. (ECF No. 179-1 at 8.)

Defendants argue that (1) Plaintiff improperly raises allegations not pleaded in the Complaint, and (2) there are triable issues of material fact as to Plaintiff's allegations. (ECF No.

205 at 12, 16.)  The Court will address Defendants' arguments in turn.

### i.  Allegations concerning the 2012 Trust

Defendants argue that Plaintiff's Complaint does not allege that Defendant Calone acted incompetently, negligently, or that Defendant Calone's work product fell below the standard of care in preparing the 2012 Trust.  (ECF No. 205 at 16.)  Plaintiff responds that the Complaint specifically identifies the transactions, Defendant Calone's failure to adequately advise Plaintiff of the consequences of those transactions, and a theory of legal malpractice relating to the 2012 Trust.  (ECF No. 210 at 8.)

Rule 8 "does not require 'detailed factual allegations,'" but it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."  *Coleman*, 232 F.3d at 1292.

Defendants cite *Coleman* to argue that Plaintiff improperly puts at issue alleged wrongdoing and claims that were not pleaded.  (ECF No. 205 at 12.)  However, the *Coleman* court emphasized that notice of new allegations could take place either through amended pleadings or be made known during discovery.  *Coleman*, 232 F.3d at 1292–94; *see also Pickern v. Pier 1 Imps. (U.S.), Inc.*, 339 F. Supp. 2d 1081, 1088 (E.D. Cal. 2004), aff'd, 457 F.3d 963 (9th Cir. 2006).  Therefore, the Court will look to whether Defendants had sufficient notice of Plaintiff's allegations based on the Complaint and subsequent discovery.

Looking first to the Complaint, Plaintiff alleges that Defendant Calone prepared the 2012 Trust.  (ECF No. 1 ¶ 26.)  Plaintiff further alleges that the 2012 Trust effectively transferred to Bill all of the income stream from Plaintiff's 110 Shares as well as the distributions due her from her remaining interest in Florida Avenue, yet at the same time required Plaintiff to pay income taxes on all income generated from these two sources.  (ECF No. 1 ¶ 26.)  Finally, Plaintiff alleges Defendant Calone owed Plaintiff a duty of care, heightened by his special expertise in tax

11

law, and Defendant Calone negligently failed to use the requisite care when performing the acts described.  (ECF No. 1 ¶¶ 33, 35.)  It is true that Plaintiff does not explicitly connect her malpractice claim to Defendant Calone's preparation of the 2012 Trust.  At the very least, however, Plaintiff's allegations as a whole allow for the inference that Defendant Calone negligently prepared the 2012 Trust, especially considering the 2012 Trust's allegedly detrimental effect: transferring Plaintiff's income but not her tax liability for that income.

Discovery gave Defendant further notice about the basis for Plaintiff's malpractice claim. During Defendant Calone's deposition, Plaintiff's counsel asked whether Defendant Calone investigated Plaintiff's income and the effect entering the 2012 Trust would have on her income. (ECF No. 179-8 at 46–47; Calone Dep. I, 244:16–245:2, May 22, 2018.)  Plaintiff's counsel also asked Defendant Calone whether he included a provision in the trust that would require Bill Jackson to reimburse Plaintiff for net taxable income.  (ECF No. 179-8 at 41; Calone Dep. I, 191:8–17.)  Finally, Plaintiff's counsel asked Defendant Calone whether he included a toggle clause that would have allowed Plaintiff to disclaim future tax obligations related to the 2012 Trust.  (ECF No. 179-8 at 48–49; Calone Dep. I 247:19–248:25.)  The Court finds that Plaintiff sufficiently gave notice, both in the Complaint and during discovery, that Defendant Calone's preparation of the 2012 Trust would be a basis for Plaintiff's malpractice claim.  *Coleman*, 232 F.3d at 1292–94.  Therefore, Plaintiff may properly raise her allegations about Defendant Calone's preparation of the 2012 Trust at this stage.

### ii.  *Triable issues related to Plaintiff's malpractice claim*

To establish a claim for legal malpractice, a plaintiff must prove (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.  *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 1199 (2001).  The question of whether an attorney breached the relevant duty is one of fact and thus may only be decided in a summary judgment motion under certain circumstances.  *Starr v. Mooslin*, 14 Cal. App.  3d 988, 998 (1971).  Whether a duty exists is a question of law.  *Nichols v. Keller*, 15 Cal. App. 4th 1672,

1685 (1993). But only if the circumstances permit no reasonable doubt about whether the attorney's conduct did or did not violate the duty or standard of care owed to the client, may a court as a matter of law resolve the question of whether an attorney breached his or her duty. *Kurinij v. Hanna & Morton*, 55 Cal. App. 4th 853, 864 (1997).

Plaintiff argues that Defendant Calone's negligence is "so clear that expert testimony is not needed to prove it," but she also submits testimony from experts who conclude that Defendant Calone fell below the standard of care.[4] (ECF No. 179-1 at 2.) More specifically, Plaintiff argues Defendant Calone fell below the standard of care by (1) failing to ensure Plaintiff had sufficient income before entering into the 2012 Trust, (2) failing to ensure that certain promises from Bill to Plaintiff were enforceable, and (3) failing to include a toggle clause to allow Plaintiff to escape tax liability. (ECF No. 179-1 at 8.) Defendants respond that there are triable issues as to each of Plaintiff's allegations. (ECF No. 205 at 16.) The Court will address each allegation in turn.

### a. *Failing to ensure Plaintiff had adequate income*

Plaintiff argues Defendant Calone fell below the standard of care by failing to inquire into Plaintiff's income or the effect entering into the 2012 Trust would have on her income. (ECF No. 179-1 at 4; Calone Dep. I, 173:17–21, 184:12–21, 244:9–23.) In response, Defendants argue that Defendant Calone knew Plaintiff was receiving income from several sources, and calculated that Plaintiff had in excess of $10 million in assets after they transferred the 110 shares of Rodden, Inc. and interest in Florida Avenue to the 2012 Trust. (ECF No. 205 at 16; Calone Dep. II, 80:15–25, 84:15–20, 118:21–119:2, 176:1–6, 191:12–191:12, 193:2–16, Oct. 14, 2016.) Defendants also argue Bill Jackson advised Defendant Calone that Plaintiff's expenses were adequately paid out of her income. (ECF No. 205 at 17; Calone Dep. II, 193:11–16.) Defendant Calone further testified that he inquired into valuation information for Plaintiff's assets in early November 2012 and inquired of Bill Jackson if Plaintiff's expenses were adequately paid out of her income in fall 2012. (ECF No. 205 at 17; Calone Dep. II, 193:11–16.) Finally, Defendant

---

[4] Plaintiff argues that Defendants submit no expert testimony to rebut Plaintiff's experts (ECF No. 210 at 2), but Defendants do indeed rely on testimony from witnesses who have been disclosed as experts. (ECF No. 196-1 at 128, 130.) Plaintiff's only relevant objection to the testimony offered is that the expert disclosure was procedurally improper. (ECF No. 206-2.) However, the Court disposed of this issue in denying Plaintiff's Motion to Enforce the Scheduling Order and thus will consider the testimony offered by Defendants.

Calone testified that Plaintiff reported she had sufficient income.  (ECF No. 205 at 17; Calone Dep. II, 242:8–244:8.)

Both parties rely on Defendant Calone's deposition testimony to support their positions, though the parties clearly interpret his testimony differently.  Although Plaintiff argues that Defendant Calone did not investigate Plaintiff's income prior to executing the 2012 Trust, the evidence indicates that Defendant Calone made at least some attempts to investigate Plaintiff's income.  Reasonable minds could differ as to whether Defendant Calone's efforts were sufficient. *First Nat'l Bank*, 391 U.S. at 288–89 (noting that summary judgment is inappropriate where a factual dispute will "require a jury or judge to resolve the parties' differing versions of the truth at trial").  Looking at the evidence in the light most favorable to Defendants, the Court finds that there is a genuine dispute of material fact as to whether Defendant Calone's investigation into Plaintiff's income fell below the applicable standard of care.

*b. Failing to make Bill Jackson's promise enforceable*

Plaintiff next argues Defendant Calone fell below the standard of care by failing to include a provision in the 2012 Trust requiring Bill Jackson to return the net taxable income or taxes paid based on the 2012 Trust, as Bill promised Plaintiff.  (ECF No. 179-1 at 6; Calone Dep. I, 181:1–14, 191:8–17.)  Defendants do not dispute the fact that no such provision was in the 2012 Trust.  Rather, Defendants argue Defendant Calone and Michael Schmidt, Plaintiff's long-time accountant, testified that including such a provision would violate the IRS's retained interest rules under 26 U.S. Code section 2636(c).  (ECF No. 205 at 19; *see* Calone Dep. I, 206:32–207:11; Schmidt Dep. 89:8–25, May 23, 2018.)

The Court must draw reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.  Here, the testimony presented creates at the very least a reasonable inference that if making Bill Jackson's promise enforceable would violate IRS rules, then Defendant Calone did not fall below the standard of care by leaving out such a provision.  Therefore, the Court finds there is a genuine dispute of material fact as to whether Defendant Calone fell below the standard of care by failing to make Bill Jackson's promise enforceable.

///

14

*c. Failing to include a toggle clause*

Finally, Plaintiff argues that Defendant Calone fell below the standard of care by failing to include a toggle clause that would have allowed Plaintiff to terminate her responsibility for the 2012 Trust's taxes if the tax liability became too burdensome.  (ECF No. 179-1 at 8; *see* Calone Dep. I, 247:19–248:25; Klomparens Dec. ¶ 18, 19, Oct. 17, 2018.)  Defendants dispute this fact, arguing that Plaintiff in fact exercised a mechanism relieving herself of any further tax obligations from the trust in 2015.  (ECF No. 205-1 at 37; Calone Dep. II, 192:2–193:2, 207:19–208:6.)

Plaintiff's ability to escape tax liability in 2015 suggests that there was some mechanism within the 2012 Trust that allowed her to do so.  Looking at the evidence in the light most favorable to Defendants, there is a genuine issue of material fact as to whether Defendant Calone failed to include a provision that would terminate her tax responsibility for the 2012 Trust.

In sum, there are triable issues of material fact as to Plaintiff's malpractice claim such that summary judgment is improper.  Thus, the Court DENIES Plaintiff's Motion for Partial Summary Judgment.  (ECF No. 179.)

## VI.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[5]

Defendants move for summary judgment as to all four of Plaintiff's claims, raising the statute of limitations and challenging the merits of each claim.  (ECF No. 193 at 5–6.)  Plaintiff opposes Defendants' motion.  (ECF No. 206.)  The Court will address Defendants' statute of limitations argument and then the merits of each claim.

### A.  Statute of Limitations

Defendants argue that Plaintiff is time-barred from bringing her claims.  (ECF No. 193-1 at 20.)  Plaintiff argues that the statute of limitations for all her claims was tolled on various grounds such that her claims are timely.  (ECF No. 206 at 20–24.)

As a preliminary matter, Defendants assert that Plaintiff's malpractice claim has a one-year statute of limitations under California Civil Code section 340.6 ("section 340.6") and that

---

[5]    The Court set forth the legal standard for summary judgment above in connection with Plaintiff's Motion for Partial Summary Judgment.  Thus, since the same legal standard applies to the instant analysis, the Court will incorporate said analysis by reference.

section 340.6 subsumes Plaintiff's other claims. (ECF No. 193-1 at 20.) Plaintiff does not dispute Defendants' assertion that section 340.6 applies to all claims arising from Defendant Calone's conduct. Further, case law supports applying section 340.6's statute of limitations provision to all claims arising from Defendant Calone's legal services.[6] Accordingly, the Court will analyze all Plaintiff's claims pursuant to section 340.6's statute of limitations provision.

### i. Standard of Law

Section 340.6 provides an outside limit of four years on claims covered by the section. Cal. Civ. Proc. Code § 340.6. However, under the statute's discovery rule provision, the four-year limit is reduced to one year from when the plaintiff discovers, or should have discovered, the facts constituting the wrongful act. *Id.* "[I]n accordance with section 340.6(a)'s plain language, defendant, if he is to avail himself of the statute's one-year-from-discovery limitation defense, has the burden of proving, under the 'traditional allocation of the burden of proof,' that plaintiff discovered or should have discovered the facts alleged to constitute defendant's wrongdoing more than one year prior to filing this action." *Samuels v. Mix*, 22 Cal. 4th 1, 8–9 (1999) (internal citations omitted).

The existence of a trust relationship, however, limits the plaintiff's duty of inquiry. *WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015). Thus, when a potential plaintiff is in a fiduciary relationship with another individual, the plaintiff's burden of discovery is reduced, and they are entitled to rely on the statements and advice provided by the fiduciary. *Id.* (citing *Eisenbaum v. W. Energy Res., Inc.*, 218 Cal. App. 3d 314, 324 (1990). The question of when a cause of action accrues, especially in malpractice cases, is essentially a question of fact. *Wozniak v. Peninsula Hosp.*, 1 Cal. App. 3d 716, 725 (1969). It is only where reasonable minds can draw but one conclusion from the evidence that the question becomes a matter of law. *Id.*

Section 340.6 also sets forth several tolling provisions. Section 340.6(a)(2) tolls the

---

[6] "[F]or any wrongful act or omission of an attorney arising in the performance of professional services, an action must be commenced within one year after the client discovers or through the use of reasonable diligence should have discovered the facts constituting the wrongful act or omission. In all cases other than actual fraud, whether the theory of liability is based on the breach of an oral or written contract, a tort, or a breach of a fiduciary duty, the one-year statutory period applies." *Levin v. Graham & James*, 37 Cal. App. 4th 798, 805 (1995); *see also Southland Mech.l Constructors Corp. v. Nixen*, 119 Cal. App. 3d 417 (1981).

16

statute when the "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." The continuous representation rule is not triggered by the mere existence of an attorney-client relationship. Cal. Code Civ. Pro. § 340.6(a)(2). Rather, the statute's tolling language addresses a particular phase of such a relationship: representation regarding a specific subject matter. *Pension Tr. Fund for Operating Engineers Local 3 v. McMorgan & Co.*, No. CIV S–06–904 WBS JFM, 2006 WL 2788340, at *8 (E.D. Cal. 2006). The limitations period is thus not tolled when an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff. *Id.* Moreover, the continuous representation tolling rule assumes a relationship between the parties that is not sporadic, but which develops and continues from the professional services in which the alleged malpractice occurred. *Foxborough v. Van Atta*, 26 Cal. App. 4th 217, 229 (1994).

### *ii. Analysis*

Plaintiff filed the present Complaint on April 28, 2016. (ECF No. 1.) The thrust of Defendants' argument is that Plaintiff's claims accrued when she signed the estate plan documents at issue. (ECF No. 193-1 at 21–22.) In other words, Defendants argue Plaintiff knew or should have known of her potential injury as early as 2005, when she signed the Marital Agreement and when she alleges the 1993 Trust was modified to become irrevocable. (ECF No. 193-1 at 23; *see* ECF No. 1 ¶ 30; Jackson Dec. ¶¶ 19–23; Calone Dep. I, 331:18–332:12; Schmidt Dep. 148:18–150:13.)

Plaintiff responds that Defendant is estopped from asserting the statute of limitations as a defense because Defendant Calone failed to give Plaintiff copies of key documents and delayed providing access to her file, resulting in a lack of information that prevented Plaintiff from filing her suit. (ECF No. 206 at 20–21; Calone Dep. I, 102:16–23; Pl.'s Exs. J, M, I, E.) Plaintiff also argues that her claims are tolled due to delayed discovery, continuing representation, and concealment of the cause of action. (ECF No. 206 at 21–22.)

As noted, section 340.6 sets an outside limit of four years from the date of the wrongful act. Cal. Civ. Proc. Code § 340.6(a). Thus, in order for Plaintiff's claims based on Defendant Calone's actions in 2005 to be viable, one of section 340.6's tolling provisions must apply.

1　Because the Court finds that there is a triable issue as to whether the applicable statute of

2　limitations was tolled due to continuing representation and delayed discovery, the Court need not

3　and does not address Plaintiff's remaining arguments for tolling.  The Court will address

4　continuing representation and delayed discovery in turn.

5　　　　　　　　　　　　　　*a.  Continuous representation*

6　　　　　　　Defendants argue that section 340.6's tolling provision for continuous representation

7　does not apply because Defendant Calone's alleged malpractice arises from discrete transactions,

8　and his representation of Plaintiff terminated no later than 2012.  (ECF No. 193-1 at 23; *see*

9　Calone Dep. 274:11–14; 276:13–15, 292:18–25, June 8, 2018; Calone Dep. 104:1–5, 104:24–

10　105:3; Irrevocable Trust Ex. 26; Jackson Dep. 78:25–79:14.)

11　　　　　　Plaintiff submits evidence suggesting that Defendant Calone's representation stemmed

12　from the 1993 Trust and extended past the 2012 Trust.  The 2012 Trust, which received transfers

13　from the 1993 Trust, became effective November 30, 2012.  (ECF No. 206-8 at 72; Pl.'s Ex. EE.)

14　Plaintiff further points out that the gift tax return for the last Florida Avenue transaction was filed

15　in 2013.  (ECF No. 206 at 22; Calone Dep. I, 130:6–10.)  Moreover, Plaintiff argues that

16　Defendant Calone sent Plaintiff a letter concerning management of the 2012 Trust as late as

17　August 2015.  (ECF No. 206-8 at 166; Pl.'s Ex. LL.)

18　　　　　　The continuous representation tolling rule assumes a relationship that develops and

19　continues from the professional services in which the alleged malpractice occurred.  *Foxborough*,

20　26 Cal. App. 4th at 229.  Looking at the evidence in the light most favorable to Plaintiff, a

21　reasonable inference can be made that Defendant Calone continued to play a role in Plaintiff's

22　estate planning through Defendant Calone's numerous amendments to and gifts from the 1993

23　Trust to the 2012 Trust.  Even if Defendant Calone's representation concluded once the 2012

24　Trust became effective on November 30, 2012, Plaintiff's claims would be timely under section

25　340.6's outside limit of four years.  Thus, there is a genuine issue of material fact as to whether

26　Defendant Calone's representation of Plaintiff was continuous sufficient to toll the statute of

27　limitations.

28　*///*

### b. Delayed discovery

Defendants next argue that Plaintiff has no evidence to demonstrate delayed discovery of her injury.  (ECF No. 193-1 at 23.)  Defendants argue that in January 2015, Bill Jackson sent Plaintiff's caregiver an email, which stated that Plaintiff did not have funds to continue her trips or purchase an expensive pearl necklace.  (ECF No. 193-1 at 23; Jackson Dec. ¶ 23; Defs.' Ex. 28-1.)  In April 2015, when Plaintiff asked Bill about going on a trip, he told her "that she had no more funds available to go on any more trips for a while, and that [he] had just paid over a million dollars in state and federal income taxes on her behalf."  (ECF No. 193-3 at 7; Defs.' Ex. 28-1.)  According to Defendants, Plaintiff knew or should have known of her injury based on these communications.  (ECF No. 193-1 at 23; *see* ECF No. 1 ¶ 30; Jackson Dec. ¶¶ 19–23; Calone Dep. I, 331:18–332:12; Schmidt Dep. 148:18–150:13.)

The Court finds that reasonable minds could differ as to whether the communications cited by Defendants gave or should have given notice to Plaintiff that her cash flow problems stemmed from Defendant Calone's estate planning services as opposed to her own spending habits or other economic factors.  Moreover, there is no indication that Bill's January 2015 message ever reached Plaintiff, as it was sent to her caregiver.  (ECF No. 193-7, Defs.' Ex. 28.)  Put simply, Defendants have not met their burden to prove as a matter of law that Plaintiff knew or had reason to know of Defendant's alleged wrongdoing over a year before she filed suit.  *Samuels*, 22 Cal. 4th at 8–9.  Moreover, the fiduciary relationship between Plaintiff and Defendant Calone further limits Plaintiff's duty of inquiry.  *WA Sw. 2*, 240 Cal. App. 4th at 157.  Thus, there are genuine issues of material fact as to whether continuing representation and delayed discovery tolled the statute of limitations for Plaintiff's claims.  The Court therefore cannot find that Plaintiff's claims are time-barred as a matter of law.

### B.  Professional Negligence Claim[7]

Defendants argue that Defendant Calone did not fall below the standard of care because he followed Plaintiff's instructions and provided legal services that met her tax objectives.  (ECF

---

[7] The Court set forth the legal standard for a professional negligence claim during its discussion of Plaintiff's Motion for Partial Summary Judgment.  The same legal standard applies to the instant analysis.

No. 193-1 at 13–15.)  Yet, even assuming Defendant Calone followed Plaintiff's instructions,

Defendant Calone does not make it clear how that fact would absolve Defendants' liability for

professional negligence.  Regardless, as discussed above, this Court has already found there is a

triable issue of material fact as to Defendant Calone's negligence because Plaintiff provided

evidence that Defendant fell below the standard of care with respect to the 2012 Trust.  (ECF No.

206 at 18.)  As a general rule, summary judgment is inappropriate where an expert's testimony

supports the nonmoving party's case.  *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th

Cir. 1989).  For the same reasons the Court denied Plaintiff's Motion for Partial Summary

Judgment, the Court again finds there is a genuine issue of material fact as to Defendant Calone's

alleged professional negligence.

### C.  Breach of Fiduciary Duty Claim

Defendants next argue that Defendant Calone did not breach a fiduciary duty because

there were no actual conflicts of interest.  (ECF No. 193-1 at 15–18.)  Defendants further argue

that Defendant Calone testified that he properly disclosed and obtained consent for any purported

conflicts of interest that may have occurred.  (ECF No. 193-1 at 15–18; Jackson Dec. ¶ 2;

Defendants' Ex. 1; Defendants Exh 10.)

Under California law, the elements of a cause of action for breach of fiduciary duty are:

"(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately

caused by the breach."  *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995).  "The essence

of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because

the person in whom trust and confidence is reposed and who accepts that trust and confidence is

in a superior position to exert unique influence over the dependent party."  *Barbara A. v. John G.,*

145 Cal. App. 3d 369, 383 (1983).

Plaintiff submits expert testimony that Defendant Calone breached a fiduciary duty

because he represented both Plaintiff and her husband despite conflicts of interest.  (ECF No.

206-1 at 51; Dec. of Klomparens 4:12–15.)  Plaintiff's expert further testified that Defendant

Calone breached a fiduciary duty by failing to disclose that he also represented Bill Jackson and

V.A. Rodden in other matters.  (ECF No. 206-1 at 51; Plaintiff's Ex. G-1, G-1A, K-1.)  Finally,

Plaintiff's expert testified that Defendant Calone breached a fiduciary duty by failing to disclose that he was representing conflicting interests in the Florida Avenue transfers. (ECF No. 206-1 at 54; Dec. of Klomparens 9:18–10:3.)

The Court finds that the evidence presented raises genuine issues of material fact as to whether Defendant Calone represented any conflicts of interest, and if so, whether Defendant Calone received adequate consent for such representation. As such, summary judgment is improper for Plaintiff's breach of fiduciary duty claim. *In re Apple Computer Sec. Litig.*, 886 F.2d at 1116.

### D. Constructive Fraud Claim

Defendants argue that Plaintiff's constructive fraud claim fails as a matter of law because there is no evidence that Defendant Calone concealed or suppressed any material fact from Plaintiff. (ECF No. 193-1 at 19.) Defendants argue that Defendant Calone advised Plaintiff about every document she signed and tried to ensure Plaintiff understood the documents. (ECF No. 193-1 at 19; Calone Dep. II, 130:9–131:21, 132:17–133:24; Defs.' Ex. 3; Defs.' Ex. 4; Jackson Dec. ¶ 6, Nov. 2, 2017.)

To state a claim for constructive fraud under California law, a plaintiff must allege: (1) a fiduciary or confidential relationship; (2) an act, omission, or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage. Cal. Civ. Code § 1573; *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006). Thus, a plaintiff need not establish fraudulent intent to assert a viable constructive fraud claim as long as the parties are in a fiduciary or confidential relationship. *Sandy v. McClure*, 676 F. Supp. 2d 866, 882 (N.D. Cal. 2009).

Here, as discussed above, the parties do not dispute that Defendant Calone owed a fiduciary duty to Plaintiff. In its discussion of Plaintiff's breach of fiduciary duty claim above, the Court found that testimony from Plaintiff's expert raises genuine issues of material fact as to whether Defendant Calone breached his fiduciary duty by failing to disclose conflicts. Such a breach could also serve as a basis for Plaintiff's constructive fraud claim. *Sandy*, 676 F. Supp. 2d at 882. Based on testimony from Plaintiff's expert then, summary judgment is improper for Plaintiff's constructive fraud claim as well. *In re Apple Computer Sec. Litig.*, 886 F.2d at 1116.

1    Therefore, the Court declines to grant summary judgment as to Plaintiff's constructive fraud

2    claim.

3                          **E.  Financial Elder Abuse Claim**

4        Defendants lastly argue that Plaintiff's financial elder abuse claim fails as a matter of law

5    because the claim was based solely on the 2005 Marital Agreement and Defendant Calone had

6    good faith reasons for executing the 2005 Martial Agreement.  (ECF No. 193-1 at 20.)

7        The Elder Abuse and Dependent Adult Civil Protection Act broadly defines financial

8    elder abuse as occurring "when a person or entity . . . [t]akes, secretes, appropriates, obtains, or

9    retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or

10   both." Cal. Welf. & Inst. Code § 15610.30.  Further, a person or entity that assists in the

11   foregoing conduct is also liable for elder abuse.  *Id.*

12       Plaintiff argues that Defendant Calone assisted Plaintiff's husband in taking Plaintiff's

13   interest in the 110 shares by preparing the Martial Agreement transmuting those shares, while

14   failing to disclose the effect it would have on Plaintiff.  (ECF No. 206 at 19; Calone Dep. I,

15   110:12–21.)  Plaintiff also argues that Defendant Calone did not disclose to Plaintiff that, after

16   transmutation of her 110 shares, her husband would be entitled to vote those shares.  (ECF No.

17   206-1 at 50; Calone Dep. I, 110:12–21.)  Defendant Calone did not disclose to Plaintiff that her

18   husband could borrow money against the shares.  (ECF No. 206-1 at 50; Calone Dep. I, 110:7–

19   11.)  Defendant Calone did not tell Plaintiff that her husband could effectively veto anything she

20   wished to do with the shares.  (ECF No. 206-1 at 50; Calone Dep. I, 99:23–100:6.)  Further,

21   Plaintiff argues that Defendant Calone's omissions, which are not cured by his disclosures, were

22   insufficient to adequately disclose the conflict or obtain informed consent to the conflict.  (ECF

23   No. 206-1 at 50; Pl.'s Ex. E; Calone Dep. I, 71:15–25.)

24       The Court notes that both parties rely heavily on Defendant Calone's testimony to support

25   their divergent positions with respect to all Plaintiff's claims.  Here, Defendants point to

26   Defendant Calone's testimony to argue that he had good intentions for executing the 2005 Marital

27   Agreement, while Plaintiff point to excerpts from the same testimony to support at least a

28   reasonable inference that Defendant Calone helped transfer away Plaintiff's property with intent

22

to defraud. In other words, both parties interpret Defendant Calone's testimony in such a way that the Court is left with "differing versions of the truth." *First Nat'l Bank*, 391 U.S. at 288–89. This is exactly the kind of determination that would be improper for the Court to make on summary judgment. Therefore, the Court declines to grant summary judgment on Plaintiff's financial elder abuse claim.

In sum, there is a genuine issue of material fact as to whether Plaintiff is time-barred from bringing her claims. In addition, there are genuine issues of material fact as to the merits of all Plaintiff's causes of action such that summary judgment is improper. Thus, the Court DENIES Defendants' Motion for Summary Judgment. (ECF No. 193.)

## VII. DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 41(B)

Defendants also move to dismiss the action pursuant to Rule 41(b) based on Plaintiff's inability to testify. (ECF No. 194.) Plaintiff opposes Defendants' motion, arguing that Plaintiff's inability to testify does not prejudice Defendants to the extent sufficient to warrant dismissal. (ECF No. 207.)

### A. Standard of Law

"District courts have the inherent power to control their dockets and, '[i]n the exercise of that power they may impose sanctions including, where appropriate, ... dismissal of a case.'" *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), *as amended* (May 22, 1992) (citing *Thompson v. Housing Auth.*, 782 F.2d 829, 831 (9th Cir. 1986), *cert. denied*, 479 U.S. 829 (1986). Rule 41(b) states in relevant part, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

Dismissal is a harsh penalty and is to be imposed only in extreme circumstances. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). A dismissal for lack of prosecution must be supported by a showing of unreasonable delay. *Nealey v. Trans. Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280 (9th Cir. 1980). Unreasonable delay creates a presumption of injury to the defense. *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 2002).

///

### B. Analysis

Defendants argue that Plaintiff unreasonably delayed being deposed, which resulted in permanent loss of the option of deposing her once the magistrate judge granted a protective order preventing Plaintiff's deposition due to health concerns.[8] (ECF No. 194-1 at 16.) Defendants further argue that due process requires the Court to dismiss the case pursuant to Rule 41(b) because they are irreparably prejudiced without the ability to cross-examine Plaintiff. (ECF No. 194-1 at 17.)

As a preliminary matter, Defendants' motion does not fit within Rule 41(b)'s framework. Rule 41(b) allows dismissal if a plaintiff fails to prosecute her case or comply with a court order. Fed. R. Civ. P. 41(b). Here, Plaintiff has not failed to prosecute her case. Indeed, she has actively pursued litigation. Further, Plaintiff's inability to be deposed does not violate a court order. Although the magistrate judge ordered Plaintiff's deposition to occur on March 1, 2018, (ECF No. 123), the judge ultimately granted Plaintiff's protective order before the scheduled deposition date. (ECF No. 135.) Although the Court questions whether Rule 41(b) is the proper mechanism for challenging Plaintiff's actions, the Court will address the merits of Defendants' arguments nonetheless.

To that end, Defendants first argue that due process demands they be able to cross-examine Plaintiff. (ECF No. 194-1 at 16.) To support this, Defendants cite a list of cases that emphasize the importance of cross-examination generally. (ECF No. 194-1 at 16–17.) Yet Plaintiff correctly points out that Defendants cite no cases where a court has dismissed a suit based on a plaintiff's physical inability to testify. (ECF No. 207 at 2.) In contrast, Plaintiff cites malpractice cases that proceeded without the client's testimony, such as where a deceased client's estate brought the action. *See, e.g., Wood v. Jamison*, 167 Cal. App. 4th 156, 159 (2008); *Granquist v. Sandberg*, 219 Cal. App. 3d 181, 185 (1990).

Defendants argue further that in the instant case, Plaintiff's knowledge, intent, and

---

[8] In granting the protective order, the magistrate judge found, "[P]laintiff is no longer able to be deposed without a serious risk to her health, including the potential of death. Furthermore . . . there is no indication that plaintiff's condition will improve or change, absent a medical miracle, such that she may be safely deposed in the future." (ECF No. 135 at 3.)

instructions to Defendant Calone are critical. (ECF No. 194-1 at 18.) Defendants rely primarily on *McDermott* and *Solin* to support the contention that Plaintiff's inability to testify irreparably prejudices Defendants. (ECF No. 194-1 at 20); *McDermott, Will & Emery v. Superior Court*, 83 Cal. App. 4th 378 (2000); *Solin v. O'Melveny & Myers*, *LLP*, 89 Cal. App. 4th 451 (2001).

In *McDermott*, the court dismissed a derivative malpractice suit brought by shareholders of a corporation against the corporation's outside counsel. *McDermott*, 83 Cal. App. 4th at 381. The court explained the unique derivative action at play in *McDermott*, noting that shareholders suing on behalf of a corporation cannot waive the corporation's attorney-client privilege. *Id.* at 383. The court distinguished a derivative action from a direct malpractice action, where an individual suing on his or her own behalf waives the privilege, thus enabling the attorney to disclose privileged information necessary to defend against the action. *Id.* at 383–384. The court held that the corporation was the holder of the attorney-client privilege, not the shareholders, and dismissed the action because "in the absence of a waiver by the corporate client, the third-party attorney [was] effectively foreclosed from mounting any meaningful defense to the shareholder derivative action." *Id.* at 381.

*Solin* presented a similarly unique attorney-client privilege issue. In *Solin*, an attorney sought out a law firm for advice concerning his representation of third-party clients. *Solin*, 89 Cal. App. 4th at 455. The attorney sued the firm for malpractice based on the firm's allegedly deficient advice. *Id.* at 455–456. Resolution of the dispute hinged on the substance of discussions between the attorney and the firm about the third-party clients, but the attorney's third-party clients refused to waive attorney-client privilege. *Id.* at 456. The court stated, "It strikes us as fundamentally unfair for a client to sue a law firm about the advice obtained and then seek to forbid the attorney who gave that advice from reciting verbatim, as nearly as memory permits, the words spoken by his accuser during the consultation." *Id.* at 463.

Defendants argue that, like the attorneys in *McDermott* and *Solin*, they cannot mount a meaningful defense without Plaintiff's testimony. (ECF No. 194-1 at 22.) The Court disagrees. Both *McDermott* and *Solin* involved malpractice claims where attorneys were unable to testify in

their own defense because a third-party client refused to waive attorney-client privilege. That is not the case here. There is no third-party client preventing Defendant Calone from testifying about privileged conversations with Plaintiff. Defendant Calone has been deposed and can freely testify in his own defense. As such, *McDermott* and *Solin* are unpersuasive.

Moreover, Plaintiff's inability to testify does not prejudice Defendants sufficient to warrant the extreme measure of dismissal. *Henderson*, 779 F.2d at 1423. Plaintiff, who bears the burden of proving her allegations, presumably will be the party most prejudiced by her own lack of testimony, not Defendants. For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss under Rule 41(b). (ECF No. 194.)

## VIII.   CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  Plaintiff's Motion for Leave to Amend (ECF No. 139) is DENIED;

2.  Plaintiff's Motion to File a Supplemental Complaint (ECF No. 172) is DENIED;

3.  Plaintiff's Motion to Enforce the Scheduling Order (ECF No. 196) is DENIED;

4.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 179) is DENIED;

5.  Defendants' Motion for Summary Judgment (ECF No. 193) is DENIED; and

6.  Defendants' Motion to Dismiss Pursuant to Rule 41(b) (ECF No. 194) is DENIED.

7.  The parties are hereby ordered to file a Joint Status Report within thirty (30) days of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

Dated: September 30, 2019

Troy L. Nunley
United States District Judge